First case on this afternoon's docket is in re the marriage of Krista Rexing versus Kenneth Rexing and we have Miss Paula Newcomb as for the appellant and we have Jaron Morell for the appellate. You may begin Miss Newcomb. I'm Paula Newcomb. I'm here for the appellant which is Kenneth R. Rexing. He was the respondent at the trial court. This is an appeal of several issues from a divorce case that went on approximately four days, bench trial in Jefferson County Circuit Court. There are many, it was a long trial, it's a large record and there are many issues I believe that we've raised but I like probably the one I'm going to focus on I think are the two big ones and that is the dissipation issues and the child custody issues. The judge ordered my client to pay in the settlement dissipation award to the wife, I figure it's approximately $40,000. If I'm going to give a little history, I don't know, this is an expedited appeal, I don't know if the court has had a chance to look at the record of the briefs. I do have a reply brief to file which is Friday or Monday I think is due but these parties were married 17 years. They had four children when they married. He had a two year degree in horticulture from Murray State. He was from a farm family from Plainsville, five brothers, a father who had a large farmholdings. He grew up as a farmer in that family. He went to work at General Tire and he worked there the entire time of the marriage and they had four children and he did that and he eventually injured his shoulders, both shoulders about the time that this marriage was breaking down. He was having surgery on the shoulders and no longer able to work. But Mr. Rexing still maintained his desire to farm and in addition to that full time job, he acquired a land, a house, an old farmhouse of 85 acres and another 20 acre parcel and a 10 acre parcel. In addition to the full time job that he held, he farmed full time in the summer from April to November. The dissipation, I think there's a lot of, just the tone of this whole divorce case is that mostly everything that the wife asked for she got, nothing that the husband asked for did he get. I was the third lawyer in the case but I think if you look at the cumulative effect of the rulings and the final holdings in this case, it was a very unfair and inequitable settlement, a disparate settlement. When you say settlement, you're talking about the judgment the court entered. There wasn't a settlement, was there? Right, a judgment. And when I look at the defendant or the athlete's brief, the first five, six, seven pages of the statements of fact, there's a lot of verbatim recitation from the record of the events that happened on the day these parties separated. And while that conduct is not excusable but it's explainable, as Mr. Rexing said, I was sleep deprived, I had been working nights, I had been farming days, I would lay down on the concrete floor at work and take a 15 minute nap and I just snapped. I was exhausted and I snapped. And it's an unfortunate thing and I think that it was Mrs. Rexing, that was the end of the marriage in that day for her. She never again was willing to talk to him about anything or any settlements or possibilities of reconciliation, which is a sad thing because they had a long marriage and apparently a pretty good marriage up to that point. But the statute nevertheless says that the assets of the parties should be divided without regard to marital misconduct. And I don't believe that Judge Franklin could put aside his perception that Mr. Rexing had committed some physical abuse to her. And I think he was penalized over and over and over again in this case and he should not have been. He worked and he worked hard and he made a huge contribution, put her through school, she got a bachelor's degree, she started on her master's degree, she comes out of the marriage with that employment whereas he's disabled and I just think it's a terribly disparate settlement. He was forced to take all the personal property. He didn't want all the personal property but he was required to take the personal property. He asked for tractors, things in the barns, but nevertheless, so then he got set with all that personal property that the wife had possession of. He wanted to farm in five acres. He was not awarded that. It was ordered all to be sold. And it just goes on and on and on about the request that he made that he was not awarded. But I think I need to dwell on the dissipation. There are four areas that he found dissipation. And first of all, a finding of dissipation puts, if you properly put something on notice of dissipation, then the burden switches to Mr. Rexing to show that how he spent the money, it was not dissipated. Now the appellee argues that he didn't overcome that burden, however he clearly did overcome that burden. First of all, the pleading is not sufficient. The notice of dissipation pleading is amended and it just says marital money spent during the marriage. It's just not clear enough to know what was being pled and what he was supposed to defend. That's the first problem with that. Secondly, is you have to have a date to commence that. The 2007 of August was the day the party separated. Up until that day, they had been to the Sweet Farm and Watermill Festival as a family. So they were not in, the marriage wasn't in distress before that date. There was no divorce talk, there were no OPs, there were no police reports. They were together as a family up until that date in August. However, Judge Franklin included the whole year of 2007 in his dissipation analysis. And that's wrong. That's the wrong time period. This law doesn't require it. You have to use the time period that the marriage was irretrievably breaking down. So he should have went from August in 2007 forward, but not back in 2007 when Mr. Rexing was living with him as a family and providing the money for the household. And how did you pick out August? That was the date that they separated, when she called the police and had him put in jail. You're saying that that's the day that was the beginning of the breakdown of the marriage? Yes. Up until that day, we don't have anything really to establish that there was. Later on in this record, they put in a video recording where he was scolding one, or an audio recording that he was scolding a child back, well, I don't really know when that was. But she submitted that in support of a request for custody. But I don't think that's really when you can say the marriage started breaking down, because there's nothing happening between that, whenever that was, which we don't know, and August. But there have been no separations. There have been no talk about divorce. There's nothing until the day in August that this occurred. So, his requirement is that he rebuy the notice of the dissipation. That brings me to his checking accounts. Mr. Rexing had suffered a shoulder injury, and he had lump sum settlement out, and he was getting a payment. But he was back to work. That's how they paid him the lump sum settlement. All that money was going into a checking account. He testified they were getting ready to build a home. This is another reason I know there was no breakdown of this marriage going on until after August, because he said they had saved up this $26,000, which was to be the down payment on their home that they were going to build. So, he had that money in the bank. She called the police. He was put in jail on domestic violence cases. They're a 72-hour hold. So, he was in jail for three days, and during that time period, Mrs. Rexing went and withdrew what she determined to be half of the marital money, which mainly was the savings from this work comp money, because he always put the work comp check in the bank to save it for this house that was going to be built and different things. Every year, they paid a $10,000 mortgage out, one lump sum payment on this farm payment, and it was due to be paid. They had actually had one year. They paid one year ahead, but the remaining, Judge Franklin has said that he dissipated the remaining money in that checking account, which if she took her half out, then how could he have dissipated the half that she left to him? But not only, I believe, that splitting it half and half, it was his money. She took what she considered her half of the money out, but nevertheless, out of what was left, he made another $10,000 mortgage payment, and we put in adequate evidence that he did that. Judge Franklin should never have said that he dissipated that account, because first of all, Mrs. Rexing took her $9,000-some-odd, as she puts in her brief, out of that account, and of what was left, Mr. Rexing testified $10,000 went to the mortgage payment. So I could not ever make Judge Franklin understand that this account, it's spent on the mortgage. He had not spent this money in any other way but for the mortgage on the farm, which incidentally, Mrs. Rexing had possession of. She lived there for another 18 months with no rent, no payments, so whatever he took out of that account went to her benefit anyway. He also paid $15,000 in the year of 08 in support, and in June of 08, he was disabled again in another shoulder surgery, and was no longer receiving money from General Tire. So, you know, there was, I cite the San Fratello case, where it says they remanded to have the court clarify whether $87,500 paid in child support was wrongly included in the dissipation amount. Here again, he was ordered to pay child support through that year, and at the time of hearing, he was, he had a motion to modify downward, and the court did modify to $850 down from $1,300. But he was reasonably current, and then when the farm was sold, he got totally current, and there's now another motion to modify, which hasn't been heard because we're here at the appellate court with this case. So I think that, you know, Judge Franklin doubly sanctioned, doubly hit him here on that account, on those monies. The, you know, it just, this record is just, it's so full of things that seem, I said I was the third lawyer in there, I came in in October of 2008. This case was already set for trial in December of 2008, when I entered my appearance about 60 days before, and it is true that the court said, we're going to trial in December, you have to be ready. There was a September setting that had been vacated, and it was clear that the judge showed displeasure with that case, and it had not gone on to trial in September. But when I got the case in and was looking at the record, I found that in September, Ms. Rexing's counsel had filed a list of 14 witnesses about a week before the trial date. And Mr. Gibson had objected to that, and asked for continuance, and it was granted. So I don't think the delay that was frustrating Judge Franklin was entirely my client's fault, as far as getting to trial. Nevertheless, we went to trial in December. As far as, and the other issue my client wanted, and he feels so strongly about the issues of custody, Mr. Rexing, as I said, he's from a farm family, he's probably one of the hardest working clients, of all the clients I've ever had in 20 years, I think he's probably got one of the hardest work ethic kind of, which is instilled in him as a, growing up in a farm family. He worked his farm, he required the children to help him. They planted, they hoed, they painted pumpkins, they sold pumpkins, but then they were allowed to keep the money for the sale of the pumpkins each year. And while it's described as like he was a slave driver, and very strict and cold and stark, that's just not the relationship he has with those kids. He required them to work, but the testimony in the court is, and he's portrayed in a lot of respects, but he was able to keep them, he was able to keep them behaving. And Mrs. Rexing, when it comes to the two boys, cannot control those boys. They're destructive, they fight with her physically. The grandmother lives in the house all the time, and the evidence was that she chases them, hits them with the broom to try to correct them. They call a witness called Martha Hargis, which was their witness, and Martha Hargis said the boy jumped on the hood of the car, tore up Mrs. Rexing's car, tore the headliner out of it, broke the windshield, and on and off. And while I wrote in the brief and I argued this to Judge Franklin, the girls were 15, they were twins, they're 15 now, 14 at trial. They vocally said, we want to stay with mom, we want to be with our mom. But the boys we asked to have in camera interviewed, and Judge Franklin refused to interview them. Ms. Merrill objected, he didn't interview them. But nevertheless, the evidence about those boys is that since she had sole custody of them, they had to be medicated. One of the boys was medicated to keep him more docile. And this is just a case where the children should have been split up. It's not in the best interest of those boys because it's not working. Thank you. Ms. Newcomb, you'll have the opportunity for rebuttal. Thank you. Ms. Merrill? At the court, Ms. Newcomb, my name is Darren Merrill, and I'm here on behalf of the appellee, Krista Rexing. As Ms. Newcomb correctly stated, there are several different issues appealed here, so I will just try to briefly touch on them in the best way I know how. First, I think that the court needs to just be aware that the appellant's financial evidence was barred in this case. That was done for a reason. A motion to compel him for sanctions was originally filed against Mr. Rexing when his second attorney was arguing his case. On that date, Mr. Gibson walks into court and says, You're right, I haven't done it, please give me 10 more days and I will pay Ms. Rexing's fees. Admittedly, he hadn't complied. We go on down the road to trial, and Judge Franklin's docket entry specifically says, and this is approximately 30 days before a 5-day trial, Petitioner appears by her attorney, Darren Merrill. Respondent appears with his attorney, Paula Newcomb, who appears at 1215. Court was to start at 11, an hour and 15 minutes late. We waited. Respondent still does not provide a discovery required, such as pharma counties, bank records, copies of checks. Respondent is warned that he could be barred from testifying on items that he failed to provide a discovery. So he's warned, 30 days before. We have a final pre-trial before a week-long hearing. Judge Franklin's entry. Attorneys Darren Merrill and Tim Neubauer appear for Petitioner Christopher Rexing. No one else appears. This is at 9 o'clock. Court waits until 915, again. Counsel shows up 15 minutes late, 3 days before a week-long trial. Petitioner files a motion to bar evidence. Only at that point did I try to bar the evidence. I had given her every chance, and at that point, she shows up with a stack of documents this high, a list of witnesses, and only after that point was the financial evidence barred. He was specifically warned 30 days before evidence got barred. So, as far as whether or not he likes the dissipation ruling, well, he might not like it, but he wasn't allowed to present financial evidence because of his fault. Now, as the Court is well aware, a dissipation award will not be disturbed unless it's against the manifest weight of the evidence. Well, the appellee here presented, and there was an amended notice of dissipation filed 90 days prior to the trial. So, at trial, all the evidence was presented, and then it becomes the appellant's burden to provide clear and specific evidence where these monies were spent. Now, the report I tried to figure out from Ms. Newcomb's brief, four separate issues as to dissipation, and the first was criminal fees in the amount of $9,000. I believe she correctly stated the O'Neill case, and just a brief summary of the facts here. Mr. Rexing and Ms. Rexing had a physical argument on the day of the Sweet Corn and Watermelon Festival. Mr. Rexing was arrested for domestic battery. He then agreed to an order of protection. Twice he was arrested for violating this during the period of the divorce. He spent $9,000, or $4,500 on attorney's fees. Now, that's not disputed. It then became his burden to present that these monies were spent for a marital purpose. The offenses were committed against the petitioner. How in the world could that be for a marital purpose? There was also a dissipation award in the amount of $9,000 from a marital savings account. And just as a brief background to this marital savings account, Ms. Newcomb is correct that my client took what she believed to be one half of this account. Now, Mr. Rexing got a weekly award from an injury he had gotten from continental tire in the amount of $378 a week. During the marriage, these monies were put in an account. My client was not allowed to spend these monies because evidence was presented that they were not sure that this award would not be appealed. So if the monies were spent, they wanted to have them in case they had to pay them back. These monies were not touched. This account held $26,222.16. The total amount of settlement monies that were in there was $9,072. So what Ms. Rexing did was subtracted the $9,000 off the $26,222.16 and took one half of what was left. So she got $8,575 and he got the rest of the $26,000 account. That was clear. Petitioner's Exhibit 16 was the actual bank statement from where she made this withdrawal. That wasn't disputed and Mr. Rexing presented no evidence where he spent the rest of the money. I guess Ms. Newcomb is arguing here that it was spent on a house payment. Well, he may have testified that there was no financial document and it must be clear and specific evidence. That's not clear and specific evidence. That could have clearly been documented by a financial record and it just wasn't. The third dissipation argument was a cash lease. The parties did have a farm and it was cash leased during the entire marriage. They received a check. Why CU? Well, the first check after the parties separated went to my client, Ms. Rexing. Mr. Rexing found out about it, called the guy, yelled at him, made him put a stop payment on it. This isn't disputed. It's not disputed that he got all of the money during the entire separation. My client never got it. That's why he was charged with dissipation. He presented no evidence of how it was spent on a marital purpose. He didn't argue he got the money. He just didn't even bother to say where these monies had went. As to the workman's compensation money, Mr. Rexing agreed on his first attorney to pay $1,333 a month at child support, 40% of his income from continental tire for the party's children. She had custody. Now, on his original financial affidavit, these workman's compensation monies weren't even reflected, so this wasn't included in the child support. This check went to him every week. My client had no access to it. These parties had no contact with each other at all during the proceedings. Now, the date that was used, if Ms. Newcomb does the math, the $20,790 figure, that actually is from August until the date of trial, that's the figure that was used by Judge Franklin. There was no argument by Mr. Rexing that he didn't have sole access to these funds. He did. That was never disputed. He said, well, I lost my job, I'm disabled, so I couldn't pay my child support, so I paid my child support with these monies. That's not a marital purpose. He had agreed to pay this child support. Just because he couldn't pay it with this check, well, that's what a petition to modify child support is for. It didn't happen. He didn't pay these monies. It wasn't spent for a marital purpose. So he had a dissipation award against him for it. It's clear and simple. So I would ask the court to affirm what I could discern from Ms. Newcomb's argument, what she's appealing as far as dissipation. I briefly want to touch on the property issue. Did Judge Franklin specifically find that paying the money for the child support was not for a marital purpose? I don't believe that argument was even raised until this brief. Okay. But that's your position. That is my position, yes. And can you, have you cited any cases that say that paying child support is not for a marital purpose? Well, I would just argue that the merit, he had agreed to pay these monies from his paycheck. Which he didn't have then. Which he didn't have. So then he paid them out of funds that were in the bank. Funds that he had full access to in the bank. Okay. Now, the parties had basically three separate parcels of land. And my client, the appellee, was the only one who had this property appraised. She also had all of the personal property appraised. The appellant had no appraisals done. So both appraisers, both the personal property appraisals and the real property appraisals were presented at trial. The appraisers testified. Nobody objected to the values. Ms. Newcomb said that her client wanted the house in the Five Acres, but she wasn't allowed to. That wasn't the case. Actually, there was a provision in the judgment that if he wanted to buy this property out, he could. He just didn't. He didn't have the money to. So it was sold by agreement of everybody. As to the child custody, all I can say is Judge Franklin got this one right. Quite frankly, I was shocked that this issue was even appealed. In my brief, I've stated a couple of just factual misrepresentations from what happened at trial because it really just, it wasn't true. As to the issue of Grandma chasing the children around with the broom, well, I sat there for a five-day trial and I don't know where there was any testimony of that. What I do know there was testimony of is on the day of the Sweet Corn and Watermelon Festival, my client was beaten so bad with a dog leash that she urinated on herself. This happened in front of the two minor boys. That wasn't disputed. An agreed order of protection for two years was entered based upon that incident. Mr. Rexing didn't dispute that. First custody trial I've ever done where we actually had a grounds hearing. For over an hour, Ms. Rexing testified to the abuse she suffered at the hands of Kenneth Rexing in front of the children, against the children. I never heard him deny it. The court has the record. He didn't deny it. What he did was made excuses. He said, well, my client, Ms. Rexing, she's clumsy. Her nickname was Hammerhead. Do we have a copy of the audio? Is that part of the record? It is in the record, yes. There is a CD copy in there. And as far as that audio tape, it's a tape, probably the most disturbing tape I've heard in my career. I know I'm a young lawyer, but there barely was a dry eye in the place. It's a tape of Mr. Rexing yelling at his minor daughter because she didn't tell her track coach that she wanted to run sprints, and she's sobbing and begging him. I love you, Daddy. I love you, sir. Please stop. Please stop. And he's just going irate on this minor child. And it's clear that there are other children in the room. Judge Franklin got it right on the custody issue. As far as separating the minor children, well, the case of Slavina says there must be very compelling evidence to separate children. There was not very compelling evidence in this case. Now, I'm not going to dispute that these minor boys, and the reason the in-camera interview did not take place to the boys is because Judge Franklin found they were too young. It wasn't because he chose the girls because I wanted the girls to be interviewed and Mr. Rexing wanted the boys, so he did. He found that the minor boys were too young to be interviewed. I'm not going to dispute they have some problems, but I am going to say to the court that there were evidence that every one of his actions, actions that the boys did, they'd watch Mr. Rexing do. There was testimony that the boys broke four or five TVs during the period this divorce was taking place. Well, they'd watched their dad break TVs when he had gotten mad at their mom. Watched him throw fits? Well, Ms. Rexing testified that Kenneth would throw fits on many occasions. Yes, these boys are suffering, and yes, these boys have had to be medicated because they've watched what their dad did. If custody is not affirmed in this case, it will destroy four young children's lives. Ms. Newcomb stated in her brief that no incidents had occurred with visitation of Mr. Rexing since this case had taken place. DCFS was called twice, and he was indicated both times. I don't know how that is not an incident during visitation. She also objects that visitation is too short. It's not, quote, normal visitation. Well, there was testimony at trial that he didn't even exercise the same visitation he was awarded. He agreed he didn't exercise that visitation. He said, well, the kids had sports during that time, so I just don't take them. Well, a dad, a dad who wants to have sole custody of his kids better get used to taking four kids to sports. He just didn't do it. So I would ask that the court affirm Judge Franklin's ruling as to custody. Ms. Newcomb also appealed the issue of maintenance. Now, the standard of review on maintenance is clearly the manifest weight of evidence, and it's based upon the needs of one party versus the other's ability to pay. Well, nobody can pay here. Both of their financial affidavits reflect they're both going in the hole every month. And what I find almost comical is the year of trial, Mr. Rexing made more than my client, and she has custody of the four kids. I don't know how Ms. Newcomb feels that he would be able to pay maintenance. I wish both parties here had enough money to pay their bills every month. Thank you. Ms. Farrelly, your time is up. Thank you for your argument. Ms. Newcomb, you have the opportunity to rebut. Thank you. I think there are just some inaccuracies. We did appear on Friday before the trial was commenced on Monday with what would have been my third packet of discovery that I had tendered in since I had started. Mr. Neubauer and Mrs. Merrill appeared with a motion to bar the evidence. The judge ruled what was filed previously that week would stay in, but what I brought with me and was already filed that morning would be barred. He also would not allow an amended financial affidavit to be filed, and I think that's another instance of the error and the prejudice that he showed to my client. Unless I am mistaken, the local rules on a financial affidavit are file it three days prior to trial, and this was four days prior to trial, but for some reason he didn't want to let it be filed. So her argument is that all the financial information was barred, and therefore we could not establish our expenditures. However, that's not true either, because the farming didn't conclude until November. That year was a wet fall, and he did not conclude his farm business until late in November. So we appeared early in November, I think on the 8th, and he said, the discovery, you've got to get it in, it's going to be barred. And I remember, you know, I would have told him, I'm sure I told him, we aren't done with the farm records, we can't produce the farm records until they're all done. But eventually they were done, I think they were in the last packet that the judge barred. However, when we went to trial, Judge Neubauer, Mr. Neubauer was now the Judge Neubauer, did selected portions of the testimony. I think he did my client or something, but anyway, not every witness, but he did some. But he simply opened the door to the financial information, and I was able to get in all the farming records, Mr. Grexing's current financial state, his current disability payments, all the financial information we needed to get in came into the record because the door was open to the evidence. So I don't think... So are you saying that the court then considered the evidence that it had barred previously? I think he did some, yes. How do we know that? Pardon? Well, the exhibits are marked, and I do specifically remember that the farm ledgers are in handwritten notes, and I think you'll find those all on the record, because I asked the court to go ahead and allow those to be in because basically Mr. Neubauer was asking Mr. Grexing questions on the farm ledgers, and therefore that opened the door to get some of that in. I do think it was improper that he... There were other things that didn't come in, but I think it was improper for him to conduct a motion to bar hearing on that day without any notice to us. They appeared with a motion. He let it be argued and heard. We didn't get a final response. There was no discovery cutoff day. Certainly a financial affidavit shouldn't have been barred. But I just want to point out that that is exactly accurate, It was barred, but then he had to let some of it in at the trial anyway because the door got opened to that. I want to talk about the farm lease, the cash lease. He found that $5,000 of a cash rent was dissipated by my client. Now, the cash rent is on the farm ledger, went into the farm business, and he testified, bought seeds, pumpkin plants, whatever, and you'll see it on the ledger, and you'll see the expenditures, you'll see the labor, and you'll see the net farm income for that year. And then he took that figure, plugged it into his tax return, and they filed jointly, and they split the tax return. So I don't understand how they can argue that we didn't account or we didn't prove where that $5,000 went because it's in the record and it was proven. The other thing I got to talk about is this child support issue. Ms. Malani and Mr. Rexing had a very short return-to-client relationship. What I understand was that there was some temporary first appearance, some sort of early hearing, and she believed that child support should have been 1331. That's the figure. But Mr. Rexing either wasn't there, didn't agree, or didn't want to make that agreement at that time, didn't think it was right. There was never an order in August of 2007 or September when this started. There was no child support order at that time. But Ms. Merrill did a notice of withholding and sent it to General Tire with her signature on it, and they started withholding that amount of money. So Mr. Gibson took over, and he agreed that there was no formal order for child support. Mr. Rexing, there was no agreement to that. They had to have a hearing. It was their opinion. It wouldn't be that much. Thank you. Thank you. Thank you both for your briefs and arguments, and we'll take the matter under advisement. Remember, ruling is a force.